**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **LANNY J. DAVIS & ASSOCIATES LLC** | ) | |
| **600 Thirteenth Street, N.W.** | ) | |
| **Washington, D.C.  20005,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 11-_____** |
| | ) | |
| **THE REPUBLIC OF EQUATORIAL GUINEA** | ) | |
| **c/o The Office of the President of the Republic** | ) | |
| **Malabo, Equatorial Guinea,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**COMPLAINT**
**(Breach of contract or, in the alternative, *quantum meruit*)**

**Nature of the Action**

1.  This is an action for breach of a commercial contract between Plaintiff Lanny J. Davis and Associates, LLC, a District of Columbia limited liability company providing legal and consulting services, to assist Defendant The Republic of Equatorial Guinea, a foreign state within 28 U.S.C. § 1603, in the formulation and implementation of a program of political, legal, and economic reform.

**Jurisdiction**

2.  This Court has jurisdiction over the subject matter of this action by virtue of 28 U.S.C. §§ 1330(a) and 1605(a)(2), insofar as the contract whose breach is alleged herein constituted a commercial activity of Defendant carried on in the United States.

**Parties**

3.   Plaintiff Lanny J. Davis and Associates, LLC ("LJDA"), is a limited liability company organized and existing under the laws of the District of Columbia.  It provides legal advice to individuals, businesses, and foreign sovereigns in the areas of law, media, and legislative and political strategies having domestic and international implications.

4.   Defendant Equatorial Guinea ("Equatorial Guinea") is a sovereign state located in West Africa.  It is a member of the United Nations, and is fully recognized by the United States. Its Embassy is at 2020 16th Street, Washington, D.C. 20009.

**Venue**

5.   Venue is proper in this District pursuant to 28 U.S.C. § 1391(f)(4).

**Facts**

6.   On or about February 15, 2010, Equatorial Guinea, represented by H.E. Don Alejandro Evuna Owono Asangano ("Don Alejandro"), Minister of State and senior personal advisor to and representative of Teodoro Obiang Nguema Mbasogo, the President of Equatorial Guinea ("President Obiang"), at President Obiang's direction, signed a contract with the U.S. and global law firm of McDermott, Will & Emery LLP ("MWE")("the Contract").  The Contract was executed in Spanish.  True and correct copies of the Contract and of the English translation of the operative portions thereof are attached hereto as <u>Exhibit A</u>.

7.   The Contract provided that MWE would perform certain "Services" for Equatorial Guinea. These Services are defined in the Contract and in an attached memorandum incorporated therein by reference ("the Memorandum," attached hereto as <u>Exhibit B</u>), during the period from

February 15, 2010, through January 31, 2012.[1]  The Memorandum provided that the Services would be limited to providing advice to assist the Government of Equatorial Guinea in instituting comprehensive political, legal, and economic reforms.  Both documents, as well as others relating to the representation, were filed with the U.S. Department of Justice as required pursuant to the Foreign Agents Registration Act and are publicly available via an online search at *http://www.fara.gov/search.html*.

8.  It was understood and agreed by the parties – and was expressly documented in the Contract – that the primary responsibility for performing the Services would be borne by Lanny J. Davis and Eileen M. O'Connor, Esqs.  Mr. Davis was then a partner at MWE; Ms. O'Connor was Of Counsel to the firm.

9.  The Contract provided that the professional fees for providing the Services would be $2,055,000, to be paid by Equatorial Guinea to MWE in four equal semi-annual installments of $513,750, with the first due on March 15, 2010 and the second, third, and fourth due on September 15, 2010, March 15, 2011, and September 15, 2011, respectively.

10.  In addition, the Contract expressly provided that Equatorial Guinea would reimburse MWE for "ordinary and necessary out-of-pocket expenses incurred under this [Contract] with [Equatorial Guinea's] prior approval."  Transportation, lodging, and other expenses in connection with any travel to Equatorial Guinea in particular were to be prepaid under the same provision of the Contract.

11.  On April 1, 2010, Mr. Davis left MWE and established LJDA.  MWE agreed to assign the Contract and any payments received pursuant thereto to LJDA.  Equatorial Guinea was aware of and consented to the assignment, as is evidenced *inter alia* by the fact that the

---

[1] The Spanish-language version of the Contract states that the end-date was to be January 31, 2011.

payment it belatedly made in June 2011 was remitted to LJDA.  Equatorial Guinea also agreed

that Mr. Davis would continue to work with a partner of MWE in performing the Services.

12.  In the course of 2010, LJDA incurred out-of-pocket air, ground, hotel, and other

necessary travel expenses in connection with four visits to Africa.  Each of these trips was

undertaken with the direction, knowledge, approval, and direct participation of senior

representatives of the Government of Equatorial Guinea.  LJDA paid virtually all the necessary

expenses for Mr. Davis and an MWE attorney authorized to travel to assist in performing the

Services, in connection with three visits to Equatorial Guinea (in May, July, and November), and

substantial expenses associated with an authorized visit to Cape Town, South Africa (in June).

13.  Equatorial Guinea paid MWE the legal fees due on March 15, 2010, in the amount of

$513,750.  Such payment was not received, however, until June 2010, nearly three months after

it was required to be made according to the Contract.

14.  With respect to expenses, MWE and LJDA agreed that LJDA would pay, or would

reimburse from its own funds, all travel expenses incurred by MWE in performing the Contract.

And LJDA did so, in the amount of $101,834.95.

15.  Mr. Davis worked closely with the U.S. Ambassador to Equatorial Guinea, as well

as with senior officials of the West Africa Bureau of the U.S. State Department, reporting on

efforts to implement the reform program contained in the Memorandum.

16.  Mr. Davis specifically undertook a multiple-pronged effort to implement and support

the comprehensive reform program beginning in March 2010.[2]  This effort included:

A.      Steps to obtain acceptance of Equatorial Guinea as a member of the

Energy Extractive Industries Transparency Initiative ("EITI"), including providing

_____

[2] The Services described herein are all publicly available in filings provided to the U.S. Department of Justice as
required pursuant to the Foreign Agents Registration Act and can be retrieved via an online search at
*http://www.fara.gov/search.html.*

assurances that it had fulfilled all relevant requirements guaranteeing transparency with respect to the expenditure of revenues from offshore oil and the participation of and respect for civil society within the country.  As has been publicly reported, Equatorial Guinea failed to submit its application within the prescribed deadline, and did not satisfy the EITI Board that it had met the other conditions for membership.  In the spring of 2010, the Board rejected a request for an extension of the deadline, and declined to accept Equatorial Guinea as a member of the EITI.

B.     Mr. Davis assisted in the drafting of a public address delivered by President Obiang on June 22, 2010, at the Global Media Forum in Cape Town, South Africa, sponsored by CNN/Time/Fortune and widely covered in the press.  In the speech, entitled "Turning the Page: Equatorial Guinea's Commitment to Comprehensive Reform and Transparency," President Obiang committed his Government to a specific five-point reform program consistent with the Memorandum attached to the Contract.  He pledged reforms in the areas of resource management, social and economic development, legal institutions, relations with human rights organizations (including the Red Cross), and environmental conservation.  He invited foreign investment to come back into his country in reliance on these promises of democratic reforms.  A copy of this speech is attached hereto as Exhibit C.

17.  The Cape Town speech was praised by, *inter alia*, Nobel Peace Laureate Archbishop (ret.) Desmond Tutu, who, in a letter to the President dated August 2010, pronounced himself "encouraged and impressed by your speech and your willingness to make these public commitments in front of the world's media and to respond – before, during, and after your

speech – to the media's questions." Archbishop Tutu concluded his letter with an offer "to help you in any way I can." A copy of the letter is attached hereto as <u>Exhibit D</u>.

18.  Equatorial Guinea failed to make the next payment against legal fees, due to LJDA on September 15, 2010, in the amount of $513,750.  The legal fees required for payment by September 15, 2010, were eventually paid in March 2011, only after threats of litigation by LJDA.

19.  Mr. Davis, both as a partner at MWE and as the principal of LJDA performed the Services as contemplated in the Contract competently, professionally, and completely during the remaining Contract term.

20.  On February 3, 2011, in Washington D.C., Don Alejandro and Mr. Davis mutually agreed to terminate the Contract effective immediately.

21.  Equatorial Guinea has failed to pay the reasonable, necessary, authorized, and fully documented out-of-pocket expenses incurred by MWE and/or LJDA, that were unambiguously required to be paid under the Contract.  By March 2011, those expenses had reached $141,911.11, which amount remains due and owing as of the date of this Complaint.

22.  The expenses incurred by MWE and/or LJD, for which payment has not been received, are broken down by category in a table prepared and delivered to Equatorial Guinea in mid-March 2011, and attached hereto as <u>Exhibit E</u>.  On three separate occasions a notebook detailing the expenses, down to line-item cab fares and meals, including receipts, was delivered to Don Alejandro, senior advisor to the President of Equatorial Guinea.  By way of summary and illustration, of the nearly $142,000 due, some $56,000 represents expenses in connection with four trips to Africa.  Over $13,000 due is costs incurred by MWE and LJDA in making advance payments, at the request of the Equatorial Guinean Ambassador and with a promise of full

reimbursement, to pay for an entertainer to perform at a reception and related activities in connection with Equatorial Guinea National Day celebration in Washington.  More than $38,000 was LJDA's payments to professional consultants hired in order to perform or to assist in specific contractual Services.  All of these expenses, and all of the others itemized in Exhibit E, were necessarily incurred in performing the Contract in accordance with its terms, and were undertaken with the knowledge and consent of Equatorial Guinea and various senior representatives of the Government, including Don Alejandro and/or President Obiang.

23.  The disbursements portion of the bill, owed to LJDA pursuant to the terms of the Contract, remains unpaid.  On September 8, 2011, LJDA made what it described as its final written demand on Equatorial Guinea for payment of $141,911.11.  No payment has been received by LJDA since that letter was sent.

24.  In accordance with an agreement between the two firms, LJDA has fully reimbursed MWE for all costs incurred by the latter in connection with the Contract.  LJDA is, therefore, the sole party entitled to enforce the unpaid contractual debt against Equatorial Guinea.

**Count One:**
**Breach of Contract**

25.  The allegations set forth in ¶¶ 1-24, *supra*, are incorporated herein by reference.

26.  The Contract is a purely commercial activity carried on by Defendant in the United States, in the performance or non-performance of which Equatorial Guinea is not entitled to sovereign immunity, as provided in 28 U.S.C. § 1605(a)(2).

27.  MWE and LJDA performed their contractual obligations in full and in a manner completely conforming to the requirements of the Contract

28.  The payment by Equatorial Guinea of the fees required by the Contract estops Defendant from claiming that it did not receive the benefits of performance of the Contract, first by MWE and then by LJDA.

29.  The contractual provision requiring Equatorial Guinea to pay out-of-pocket costs incurred by MWE and LJDA is clear, unambiguous, and mandatory.

30.  Wherefore, Equatorial Guinea remains indebted to LJDA in the amount of $141,911.11.  LJDA prays judgment in that amount as breach-of-contract damages, as well as pre- and post-judgment interest as provided by law, and the costs of bringing this action, including reasonable attorneys fees.

**Count Two:**
***Quantum Meruit***

31.  The allegations set forth in ¶¶ 1-24, *supra*, are incorporated herein by reference.

32.  In their performance of their obligations under the Contract, MWE and LJDA provided Equatorial Guinea with value in the amount of $141,911.11, in the form of expenses for services and products authorized by Equatorial Guinea, as set out in <u>Exhibit E</u>.

33.  MWE and LJDA have demanded payment for their out-of-pocket expenditures incurred in reliance on the Contract and the undertakings made by Equatorial Guinea as set out therein.  Those demands for payment have not been honored.

34.  Wherefore, Equatorial Guinea remains indebted to LJDA in the amount of $141,911.11.  LJD prays judgment in that amount in *quantum meruit* damages, as well as pre- and post-judgment interest as provided by law, and the costs of bringing this action, including reasonable attorneys fees.

## Conclusion and Prayer for Relief

35. For all of the foregoing reasons, LJDA respectfully prays that this Honorable Court:

    a. ASSUME jurisdiction over this Action, pursuant to 28 U.S.C. §§ 1330(a) and 1605(a)(2);

    b. DECLARE that the failure of Equatorial Guinea to pay the out-of-pocket costs itemized by LJDA constitutes a breach of the Contract entered by Equatorial Guinea and MWE in February of 2010;

    c. ENTER in favor of LJDA, and against Equatorial Guinea, judgment for breach-of-contract damages in the amount of $141,911.11;

    d. Alternatively, AWARD to LJDA, and against Equatorial Guinea, judgment for *quantum meruit* damages in the amount of $141,911.11;

    e. GRANT LJDA pre-judgment interest on the above-mentioned sums, from the date each element of the unpaid debt became due and payable, at the rate established by law;

    f. AWARD to LJDA the costs of bringing this Action, including reasonable attorneys fees and expenses; and

    g. GRANT LJDA such additional relief as to the Court shall seem just and equitable.

Date: October 5, 2011

Respectfully submitted,

Mark S. Zaid, Esq.
D.C. Bar #440532
Mark S. Zaid, P.C.
1250 Connecticut Avenue, N.W.
Suite 200
Washington, D.C. 20036
(202) 454-2809
(202) 330-5610 fax
Mark@MarkZaid.com

Attorney for Plaintiff
