UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LANNY J. DAVIS & ASSOCIATES LLC, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>REPUBLIC OF EQUATORIAL GUINEA, )<br>)<br>    Defendant. )<br>                                      ) | Case No. 11-1787 (RC)<br>Republic of Equatorial |

**DEFENDANT REPUBLIC OF EQUATORIAL GUINEA'S
REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANT'S
MOTION TO VACATE DEFAULT JUDGMENT**

**INTRODUCTION**

Defendant's Motion to Vacate the Default Judgment and its Motion to Dismiss pursuant to Rules 12(b)(2), (b)(4), and (b)(5) must be granted.[1] The undisputed Declaration from the Ministry of Foreign Affairs of the Republic of Equatorial Guinea, attached as Ex. 1, indicates not only that the envelope transmitting the Complaint and Summons in this matter was not properly addressed, but significantly, it was never received by the Ministry. Therefore, there was no service in this case.

It is undisputed that Plaintiff omitted the mailing address for the Ministry of Foreign Affairs on the Form Affidavit and PS Form 2865 that it provided to the Clerk of the Court. Consequently, the Ministry of Foreign Affairs' mailing address does not appear on the return receipt under the words "Street and No. (*Rue et No.*)" or at any other place on the return receipt. Nor did Plaintiff serve a copy of the Default Judgment on Defendant as required by 28 U.S.C. §

---

[1] Plaintiff's Motion to Vacate is also predicated on Rule 12(b)(1) and (b)(6). That aspect is addressed in Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss.

1608(e) and this Court's August 26, 2013 Order and Final Judgment. *See* Order and Final Judgment ¶ 3 , Aug. 26, 2013, ECF No. 19 ("The plaintiff shall *forthwith*, at its own cost and consistent with the requirements of 28 U.S.C. § 1608(e), send a copy of this Order and Final Judgment, and the Memorandum Opinion issued this date, to the defendant.") (emphasis added). In an attempt to explain away these errors, Plaintiff misstates and misapplies the law and erroneously argues that its attempt to serve the Summons and Complaint on Defendant was good enough to suffice. However, as discussed below, Plaintiff's argument that what it did was "good enough" is insufficient to overcome the strong presumption against permitting default judgments against foreign states, and Plaintiff's actions do not meet the legal standard for service of process upon a foreign state, which can only be satisfied by "strict compliance" with 28 U.S.C. Section 1608(a). Consequently, the Court lacked jurisdiction over Defendant when it entered Default Judgment, and the Default Judgment is void *ab initio* and must be vacated.

## ARGUMENT

### I.     The Court Should Address the Merits of Defendant's Motion

In its Opposition, Plaintiff argues that Defendant's Motion to Vacate Default Judgment ("Motion to Vacate") should be denied on procedural grounds because it was accompanied by a Motion to Dismiss instead of a verified answer, in alleged violation of Local Rule 7(g). Opp. Mot. Vacate 4–5, Jan. 4, 2014, ECF No. 28. Plaintiff's argument lacks merit. Defendant did not commit procedural error by filing a motion to dismiss in place of a verified answer and, in any event, denial on procedural grounds is counter to precedent and the Foreign Sovereign Immunities Act, 28 U.S.C. § 1602, *et seq*. ("FSIA").

Although Local Rule 7(g) states that a motion to vacate default judgment shall be accompanied by a verified answer, the Court interprets this Local Rule in light of Federal Rule of

Civil Procedure 12(b), which expressly allows a party to file a motion to dismiss in place of an answer. *See Owens v. Republic of Sudan*, 374 F. Supp. 2d 1, 9 (D.D.C. 2005) ("Plaintiffs seize on the fact that Local Civil Rule 7(g) states that a motion to vacate an entry of default . . . shall be accompanied by a verified answer . . . . However, the Federal Rules of Civil Procedure permit a party to file a motion to dismiss for lack of subject matter jurisdiction or failure to state a claim instead of an answer." (internal quotations omitted)). Accordingly, the Court routinely permits defendants to file motions to vacate accompanied by a motion to dismiss instead of a verified answer, and in some cases without either a motion to dismiss or a verified answer. *See, e.g.*, *Acree v. Republic of Iraq*, 658 F. Supp. 2d 124, 127–28 (D.D.C. 2009) (granting the Republic of Iraq's motion to set aside default over plaintiff's Rule 7(g) objection, even though Iraq filed neither an answer nor a motion to dismiss); *Reading v. United States*, 506 F. Supp. 2d 13, 18–19 (D.D.C. 2007) (finding no error in granting motion to set aside default judgment that was unaccompanied by verified answer, where motion to dismiss had already been filed); *Guthery v. United States*, No. 06-176 (EGS), 2007 WL 259940, at *2 (D.D.C. Jan. 30, 2007) (granting motion to vacate default that was unaccompanied by verified answer, where defendant had filed motion to dismiss before entry of default); *Owens*, 374 F. Supp. 2d at 9 (D.D.C. 2005) (stating that "[c]ourts routinely allow defendants to file a motion to dismiss in place of an answer despite a prior entry of default"); *Harris v. District of Columbia*, 159 F.R.D. 315, 317 (D.D.C. 1995) (setting aside entry of default despite defendants' failure to file a verified answer with their motion to vacate default).

Plaintiff attempts to minimize this precedent by pointing to the fact that each case in which the Court has addressed Local Rule 7(g)'s verified complaint requirement involved entry

3

of default only, and not default judgment.[2]  *See* Opp. Mot. Vacate 5.  Plaintiff's argument makes no sense.  First, if, as here, process was not served on Defendant, then the Court lacked jurisdiction to enter the default and default judgment is void *ab initio* and can be challenged at any time without any preconditions.  *See United States v. Berke*, 170 F.3d 882, 883 (9th Cir. 1999).

Second, the fact that a judgment obtained absent service of process can be set aside at any time without preconditions (*see id.*) underscores the fact that Plaintiff's distinction between a default and a default judgment makes no sense, logically or legally.  Accordingly, the Court's practice of accepting motions to vacate unaccompanied by a verified answer turns not on whether default judgment has been entered, but on the strong presumption against entry of default judgment against a foreign sovereign, the preference to allow foreign sovereigns an opportunity to offer a full defense, and the absence of prejudice to plaintiffs that are ultimately afforded an opportunity to respond on the merits following the vacation of a default judgment. *See Acree*, 658 F. Supp. 2d at 127–28; *Reading*, 506 F. Supp. 2d at 17; *Owens*, 374 F. Supp. 2d at 8–9.  As this Court has recognized, "Congress intended § 1608(e) to provide foreign states protection from unfounded default judgments rendered solely upon a procedural default." *Int'l Road Fed'n v. Embassy of the Demo. Republic of the Congo,* 131 F. Supp. 2d 248, 250 (D.D.C. 2001) (quoting *Compania Interamericana Export–Import, S.A. v. Compania Dominicana*, 88 F.3d 948, 950–51 (11th Cir. 1996) (citing H.R. Rep. No. 1487, 94th Cong., 2d Sess. 26 (1976), reprinted in 1976 U.S.C.C.A.N. 6604, 6625)).  Consequently, denial of Defendant's Motion to Vacate on procedural grounds alone would violate the FSIA.  Indeed, the D.C. Circuit has

---

[2]  Plaintiff cites no case in which the Court has stricken or denied a motion to vacate a default judgment for failure to comply with Local Rule 7(g), and counsel for Defendant are aware of none.

cautioned against "intolerant adherence to *default judgments*" and stated its preference for consideration of defenses raised by a defendant foreign state that "has appeared and asserts legal defenses, *albeit after a default judgment has been entered*." *Practical Concepts, Inc. v. Republic of Bolivia*, 811 F.2d 1543, 1552 & n.19 (D.C. Cir. 1987) (citations omitted) (emphasis added).

Here, Defendant has complied with Local Rule 7(g) by filing with its Motion to Vacate a motion to dismiss setting out numerous defenses that would bar Plaintiff's claims in whole or in part, and this Court's consideration of the merits of Defendant's Motion to Vacate is consistent with case and statutory law. Moreover, even if Defendant committed procedural error by filing a motion to dismiss in place of a verified answer, which it did not, dismissing the Motion to Vacate for failure to comply with Local Rule 7(g) would be contrary to the interests of justice and judicial economy, and would serve only to further delay final resolution of this case. *See Owens*, 374 F. Supp. 2d at 9 ("it cannot be ignored that striking the motion to dismiss on procedural grounds would only delay this action unnecessarily," as the defendants "could easily file a verified answer and then simply resubmit their motion to dismiss at that time."). Therefore, the Court should reject Plaintiff's procedural challenge and address the merits of Defendant's Motion to Vacate.

## II. The Republic of Equatorial Guinea is Entitled to Relief from Default Judgment

### A. Plaintiff Failed to Effect Service on the Republic of Equatorial Guinea

In its Motion to Vacate, the Republic of Equatorial Guinea unequivocally denied receipt of service of process and noted that Plaintiff's return receipt failed to include the Ministry of Foreign Affairs' mailing address or any stamp from the Office of the Ministry of Foreign Affairs that would evidence service and, instead, includes only a general stamp from the Post Office in

5

Malabo, Equatorial Guinea. *See* Mot. to Vacate 11–12. In response to Defendant's Motion to Vacate, Plaintiff's counsel attempted to identify the Ministry of Foreign Affairs' mailing address by conducting internet research. *See* Opp. Mot. to Vacate, Ex. C, Schneebaum Decl. ¶ 2–3; *see also* Opp. Mot. Vacate 11. Relying on counsel's belated research attempts, Plaintiff concluded that there must be no mailing address for the Ministry of Foreign Affairs. Opp. Mot. Vacate 11. Not only did Plaintiff's research attempts come too late, but Plaintiff is also wrong. The mailing address for the Ministry of Foreign Affairs is set forth in the attached Declaration of the Director General Consular and Cultural Affairs of the Ministry of Foreign Affairs of the Republic of Equatorial Guinea, D. Sisinio Eyebe Mbana, *see* Ex. 1, Mbana Decl. ¶ 9, as well as on Director General Mbana's business card, attached as Ex. 2. Simply stated, Plaintiff's "alleged proof of service is incorrectly addressed." Ex. 1, Mbana Decl. ¶ 9.

As a fall back, Plaintiff argues that the signed return receipt "creates a strong presumption that delivery was accomplished." Opp. Mot. Vacate 11. To the contrary, on its face, the return receipt is flawed and further evidences that Plaintiff's attempted service is legally inadequate. The return receipt states:

> This receipt must be signed by: (1) the addressee; or, (2) a person authorized to sign under the regulations of the country of destination; or, (3) if those regulations so provide, by the employee of the office of destination.

Ex. 3, PS Form 2865 (Return Receipt). In fact, the return receipt evidences that Plaintiff's service documents were not "duly delivered" to the Ministry of Foreign Affairs. The box on the return receipt that is supposed to be "checked" when the mailed article is "duly delivered" is not "checked" and was, instead, left empty. *See* Ex. 3, PS Form 2865 (Return Receipt). Further, the "addressee," H.E. Ing. Don Pastor Micha Ondo Bile did not sign the return receipt. *See* Ex. 1, Mbana Decl. ¶ 6. Also, the return receipt was not signed by an employee of the office of

6

destination, as there is no signature on the return receipt under the words "Office of Destination Employee Signature (*Signature de l'agent du bureau du destination*)." *See* Ex. 3, PS Form 2865 (Return Receipt); *cf. Phoenix Consulting, Inc. v. Republic of Angola*, 35 F. Supp. 2d 14, 16–18 (D.D.C. 1999), *rev'd on other grounds* 216 F.3d 36 (D.C. Cir. 2000) (holding that plaintiff's second mailing to foreign defendant strictly complied with section 1608(a)(3)'s service requirement in that the return receipt "bears the stamp of Angola's Ministry of Foreign Affairs and unidentified initials in the box designated for the Office of Destination Employee Signature" and the return receipt "was properly addressed insofar as it adhered to the procedures of the Ministry of Foreign Affairs for the receipt, registry, sortment and distribution of all correspondence and documentation sent to the Ministry.") (internal quotations omitted). Here, and quite to the contrary of the service in *Phoenix Consulting*, neither the return receipt nor the original service documents were "properly addressed" and the return receipt importantly does not "bear[] the stamp of [Defendant's] Ministry of Foreign Affairs." *Id.*

Additionally, the unidentified general stamp on the return receipt in the place of any stamp from the Ministry of Foreign Affairs supports a finding that the bottom section of the return receipt, that was to be "[c]ompleted at destination," was actually completed at some location other than the Ministry of Foreign Affairs in Malabo, Equatorial Guinea. *See* Ex. 1, Mbana Decl. ¶ 4, 7; *cf. Abur v. Republic of Sudan*, 437 F. Supp. 2d 166, 172–73 (D.D.C. 2006) (finding that plaintiff who utilized commercial courier service DHL to serve foreign defendants satisfied section 1608(a)(3)'s requirements, where plaintiffs "produced airbills that provide tracking numbers for the outgoing packages . . . and . . . corresponding tracking receipts from DHL that indicate that delivery to Iran was completed" on the specified date and time "and signed for by 'Mil Room' (perhaps a designation for the ministry's mail room)," as well as

"DHL delivery logs . . . reflect[ing] a recipient's signature (apparently in Arabic script) for the delivery to the Sudan ministry and some type of seal for the delivery to the Iran ministry."). Had the Ministry of Foreign Affairs actually received Plaintiff's mailing, the Ministry would have affixed the return receipt with its official stamp. A copy of the stamp that would have been used had the mailing actually been received is affixed to the bottom of the Declaration of the Director General of Consular and Cultural Affairs within the Ministry of Foreign Affairs of the Republic of Equatorial Guinea. *See* Ex. 1, Mbana Decl.

The Director General states in his Declaration that there is no record in the registry of documents received by the Foreign Ministry on November 7, 2011 – the date of alleged service – that Plaintiff's documents were ever received by the Foreign Ministry. *See* Ex. 1, Mbana Decl. ¶ 8. That the Foreign Ministry did not receive Plaintiff's service documents is hardly surprising given that they were not properly addressed. The lack of mailing address, coupled with the indication on the return receipt itself that the documents were not "duly delivered" to the addressee, and the lack of the proper stamp from the Ministry of Foreign Affairs all demonstrate what is stated in in the Director General's Declaration:

> 7. The stamp on the PS Form 2865 is not the stamp of the Ministry of Foreign Affairs and that stamp would have been used in the ordinary course to evidence receipt of official documents by the Ministry.
>
> 8. I have also reviewed the registry of documents received by the Ministry on November 7, 2011, the date of the alleged service, and there is no record in that registry that any documents were received from the United States District Court for the District of Columbia on that day.
>
> 9. I also note that the alleged proof of service is incorrectly addressed. The correct address of the Ministry of Foreign Affairs is Calle Rey Malabo, s/n – Apdo.: 88, Malabo, Bioko Norte, Equatorial Guinea.

*See* Ex. 1, Mbana Decl. ¶¶ 7-9.

Here, Plaintiff chose to do the bare minimum to attempt service on Defendant pursuant to section 1608(a)(3), and did so at its own risk. Plaintiff could have adequately researched the Ministry of Foreign Affairs' mailing address before attempting service. Plaintiff could have confirmed that its service documents were correctly and completely addressed. Plaintiff could have attempted courier service by DHL hand delivery, requiring return receipt signature and a record of the same in DHL delivery logs. Plaintiff could have attempted to serve Defendant by means of 28 U.S.C. Section 1608(a)(4). Plaintiff could have adequately checked the return receipt that it received. Plaintiff could have re-attempted service by one or more of the statutorily prescribed methods. Plaintiff did none of these things and the results were foreseeable: Plaintiff failed to satisfy any of the requirements for service of process on a foreign sovereign under section 1608(a) and Defendant did not receive notice of the lawsuit. Based upon the totality of the evidence, Defendant has met its burden to establish that Plaintiff failed to properly effect service, entitling Defendant to relief from the Default Judgment under R. 60(b).

### B. Plaintiff Was Required, But Failed to Strictly Comply with the Service of Process Requirements of Section 1608(a)(3)

Plaintiff does not, and cannot, argue that it "strictly complied" with the service requirements of section 1608(a)(3). *See* 28 U.S.C. § 1608(a)(3) (requiring service "by any form of mail requiring a signed receipt, to be *addressed* and dispatched by the clerk of the court to the head of the ministry of foreign affairs of the foreign state concerned.") (emphasis added). Instead, Plaintiff mistakenly relies on *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 30 F.3d 148, 153–54 (D.C. Cir. 1994), *cert. den.*, 513 U.S. 1150 (1995), in support of its argument that "'substantial compliance' affording actual notice will suffice." Opp. Mot. Vacate at 6–7. In *Transaero*, however, the D.C. Circuit found the opposite, concluding that although substantial

compliance to the terms of section 1608(b) will suffice to effect service upon an agency or instrumentality of a foreign state, "strict adherence to the terms of § 1608(a) is required" to effect service upon a foreign state. *Transaero*, 30 F.3d at 153–54. The D.C. Circuit, in reviewing legislative history of FSIA, stated,

> The Committee Report states that section 1608(a) sets forth the exclusive procedures for service on a foreign state, but contains no such admonition for section 1608(b). Section 1608(b)(3) allows simple delivery if reasonably calculated to give actual notice, showing that Congress was there concerned with substance rather than form; but the analogous subsection of section 1608(a) says nothing about actual notice. The distinction is neatly tailored to the differences between foreign states and agencies or instrumentalities . . . .

*Id*. As the D.C. Circuit recognized in *Transearo*, nothing less than strict compliance with the terms of section 1608(a) will suffice under the law. Accordingly, Plaintiff was required to strictly comply with section 1608(a)(3)'s mandate that the mailing of the lawsuit must be "addressed" to the head of the ministry of foreign affairs. In the absence of Plaintiff's strict compliance, Plaintiff has failed to effect service on the Republic of Equatorial Guinea.

### C.  Plaintiff's Default Judgment is Void, Not Merely Voidable

Plaintiff's Default Judgment is void for lack of jurisdiction.[3]  "[I]t is uniformly held that a judgment is void where the requirements for effective service have not been satisfied." *Combs v. Nick Garin Trucking*, 825 F.2d 437, 442 (D.C. Cir. 1987); *see also Bell Helicopter Textron, Inc. v. Islamic Republic of Iran*, 734 F.3d 1175, 1177, 1180 (D.C. Cir. 2013) (affirming vacation of default judgment pursuant to Fed. R. Civ. P. 60(b)(4) for lack of subject matter jurisdiction and stating "[t]he Supreme Court has long instructed that judgments in excess of subject-matter jurisdiction are not voidable, but simply void.") (citations and internal quotations omitted); *Gates*

---

[3] Not only did the Court lack subject matter jurisdiction because Defendant was never served, but also, as is elaborated in Defendant's Motion to Vacate, Motion to Dismiss and its Reply to Plaintiff's Opposition thereto, jurisdiction over Defendant does not fall under the commercial activities exception of FSIA.

*v. Syrian Arab Republic*, 646 F. Supp. 2d 79, 84 (D.D.C. 2009) ("It is well-established that a judgment entered without personal jurisdiction over a defendant is void as to that defendant.") (citations omitted).  Nonetheless, Plaintiff chose to deny this legal principle in its Opposition brief.

Relying on *Antoine v. Atlas Turner*, 66 F.3d 105 (6th Cir. 1995) and *General Star Nat'l Ins. Co. v. Administratia Asigurarilor de Stat*, 289 F.3d 434 (6th Cir. 2002), Plaintiff argued that "even if a foreign sovereign can show that it has not received the summons and complaint delivered according to the FSIA, this renders the resulting default judgment not void but only voidable." Opp. Mot. Vacate at 6.  Plaintiff's reliance on *Antoine* and *General Star* is misplaced and Plaintiff misstates the law.  At issue in *Antoine* and *General Star* were the requirements for *service of a default judgment* pursuant to section 1608(e), rather than the requirements for service of a summons and complaint pursuant to section 1608(a).  In *Antoine*, the Sixth Circuit held that "a *default judgment* [entered without compliance with section 1608(e)] is voidable rather than void because the requirement of service is a condition subsequent to the entry of the judgment." 66 F.3d 105 at 109 (emphasis added).  Similarly, in *General Star*, the Sixth Circuit found that "even if [the defendant] did not receive a copy of the *default judgment*, the judgment is not automatically void, but only voidable upon proof of no actual notice." 289 F.3d at 441 (emphasis added).  Here, while Plaintiff also failed to comply with the service requirements of section 1608(e), and this Court's Order, it is Plaintiff's failure to comply with section 1608(a)(3) that requires vacation of the Default Judgment.  *See Practical Concepts, Inc.*, 811 F.2d at 1547 (D.C. Cir. 1987) (stating that "if [defendant] prevails on [a jurisdictional] objection, the default judgment will be vacated.").  Accordingly, Plaintiff's Default Judgment must be vacated.

## CONCLUSION

WHEREFORE, for the foregoing reasons, and for the reasons set forth in Defendant's Motion to Vacate Default Judgment and accompanying Motion to Dismiss, and Defendant's Reply to Plaintiff's Opposition to Defendant's Motion to Dismiss, the Republic of Equatorial Guinea requests that the Court vacate the Default Judgment entered against it on August 26, 2013.

                        Respectfully submitted,

                        GREENBERG TRAURIG, LLP.

By:   /s/ Robert P. Charrow
       Robert P. Charrow (D.C. Bar No. 261958)
       Precious Murchison Gittens (D.C. Bar No. 983912)
       Greenberg Traurig, LLP
       2101 L Street, NW, Suite 1000
       Washington, DC 20037
       Tel.  202-331-3100
       Fax.  202-331-3101
       E-Mail.  charrowr@gtlaw.com
       E-Mail.  murchisonp@gtlaw.com
       *Counsel for Republic of Equatorial Guinea*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 31st day of January 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system.

/s/ Precious Murchison Gittens
Precious Murchison Gittens (D.C. Bar No. 983912)
Greenberg Traurig, LLP
2101 L Street, NW, Suite 1000
Washington, DC 20037
Tel.  202-331-3100
Fax.  202-331-3101
E-Mail.  murchisonp@gtlaw.com
*Counsel for Republic of Equatorial Guinea*